Copies Mailed/Faxed
Chambers of Vincent L. Briccetti

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CHARLES E. WASHINGTON,
                Plaintiff,

v.

CORRECTION OFFICER T. FITZPATRICK,
CORRECTION OFFICER SAIN CLAIR,
SERGEANT SHERIDAN, LIEUTENANT
JORDAN, and COLONEL SIPPLE,
                Defendants.
------------------------------------------------------------x

**OPINION AND ORDER**

20 CV 911 (VB)

Briccetti, J.:

       Plaintiff Charles E. Washington, proceeding pro se and in forma pauperis, brings this action pursuant to 42 U.S.C. § 1983 against defendants Correction Officer ("C.O.") T. Fitzpatrick, C.O. Sain Clair, Sergeant ("Sgt.") Sheridan, Lieutenant ("Lt.") Jordan, and Colonel ("Col.") Sipple.  Liberally construed, plaintiff alleges violations of his First, Eighth, and Fourteenth Amendment rights.

       Now pending is defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6). (Doc. #15).

       For the following reasons, the motion is GRANTED.  However, plaintiff is granted leave to file an amended complaint, as specified below.

       The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded allegations in the complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.[1]

At all relevant times, plaintiff was confined at Sullivan Correctional Facility, in Fallsburg, New York.

Plaintiff alleges that on September 13, 2019, in an area known as the "Cross-Gates," C.O. Sain Clair pat frisked plaintiff. (Doc. #2 ("Compl.") at ECF 2).[2] During the pat frisk, C.O. Sain Clair allegedly fondled and squeezed plaintiffs' testicles and penis, including by "stroking" and "manipulating" his penis away from his testicles, actions which plaintiff allegedly complained of during the pat frisk. (Doc. #19 ("Opp.") at ECF 9, 26). Plaintiff further alleges C.O. Sain Clair is homosexual, made faces at plaintiff during the pat frisk, and said he would be "finished in a minute." (Id. at ECF 9). Plaintiff claims C.O. Fitzpatrick then approached the Cross-Gates and told C.O. Sain Clair that C.O. Sain Clair "had better write [plaintiff a] disciplinary report, or [plaintiff] is going to write you up for your behavior." (Id. at ECF 8). Plaintiff alleges that during this incident, C.O. Fitzpatrick was "constantly urging" C.O. Sain Clair to write a false

---

[1]   In considering a motion to dismiss, a district court may consider the complaint's factual allegations, documents attached to the complaint as exhibits, matters subject to judicial notice, documents integral to the complaint, and documents incorporated into the complaint by reference. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). Moreover, because plaintiff is proceeding pro se, the Court considers allegations made for the first time in his opposition to the motion to dismiss and the exhibits annexed thereto, as well as his sur-reply. See Vlad-Berindan v. MTA N.Y.C. Transit, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014).

[2]   "ECF __" refers to the page numbers automatically assigned by the Court's Electronic Case Filing system.

misbehavior report about plaintiff. (Doc. #25 ("Sur-reply") at ECF 3). Plaintiff alleges he was not injured during this incident.

That same day, C.O. Sain Clair filed a misbehavior report about this incident, a copy of which plaintiff attached to the complaint, charging plaintiff with violations for lewd conduct, refusing a direct order, interference, harassment, and refusing a pat frisk. According to the misbehavior report, C.O. Sain Clair was pat frisking plaintiff when plaintiff became aggressive and turned off the wall towards C.O. Sain Clair without an order to do so. Plaintiff shouted that he disliked how C.O. Sain Clair was pat frisking him, creating a disturbance and interfering with C.O. Sain Clair's duties. The report states plaintiff unbuttoned and unzipped his pants and exposed his genitalia to C.O. Sain Clair and a nearby non-party civilian teacher, Ms. Pomeroy. C.O. Fitzpatrick ordered plaintiff to stop exposing his genitalia twice. Plaintiff complied with the second order. The report further states that when Sgt. Sheridan came to the Cross-Gates and questioned plaintiff about the incident, plaintiff admitted to exposing his genitalia to C.O. Sain Clair and Pomeroy, and then attempted to expose himself to Sgt. Sheridan. The report concludes that plaintiff was then placed in keeplock.

Plaintiff claims C.O. Sain Clair and C.O. Fitzpatrick conspired to file the false misbehavior report. Plaintiff also claims he is innocent of the charges in the misbehavior report and that he requested video footage of the pat frisk incident "immediately" to prove so. (Compl. at ECF 5). According to plaintiff, the video would show plaintiff did not refuse to be pat frisked, he did not disobey an order, he was not hostile toward C.O. Sain Clair, and Pomeroy was not present during the pat frisk incident. Plaintiff further alleges that on September 14, 2019, when non-party C.O. Santos served plaintiff with the misbehavior report, C.O. Santos told him the pat

frisk incident had been recorded.  Plaintiff also claims that on September 17, 2019, non-party Lt. Barlow told plaintiff that video cameras were recording at the time of the pat frisk incident.

In addition, plaintiff alleges that on the day of the pat risk incident, he informed both the superintendent and the administrative deputy about the incident and that he was told, "you must accept things and let it go." (Compl. at ECF 4).

Plaintiff also claims that as a result of the charge of lewd conduct towards Pomeroy, other inmates harassed, ridiculed, and threatened plaintiff with violence until Pomeroy told "everyone" she was not present for the pat frisk incident.  (Compl. at ECF 5).

According to plaintiff, from September 17, 2019, to September 23, 2019, Lt. Jordan conducted a disciplinary hearing regarding the charges in the misbehavior report.  Plaintiff alleges that on the first day of the hearing, he requested Lt. Jordan produce video footage of the incident.  Plaintiff claims that although Lt. Jordan told plaintiff "he was working on getting the video" (Opp. at ECF 6), on the last day of the hearing, Lt. Jordan told plaintiff "there is no video." (Id.).  Plaintiff alleges Lt. Jordan asked him to sign a "Witness Interview Notice," a copy of which plaintiff submitted with his opposition, in which Lt. Jordan wrote the video does not exist; plaintiff refused to sign it.  (Id. at ECF 27).  Plaintiff claims the video was not produced because Lt. Jordan destroyed it.

Furthermore, plaintiff alleges that during the hearing, Lt. Jordan did not call Pomeroy as a witness or otherwise investigate why Pomeroy was named in the report.  Plaintiff alleges that in addition to three witnesses who testified on his behalf during the hearing, non-party C.O. Michalski testified plaintiff submitted to the pat frisk and was not aggressive.

4

On September 23, 2019, Lt. Jordan found plaintiff guilty of interference with an

employee, harassment, refusing a direct order, and refusing a pat frisk, but not guilty of lewd

conduct.  Plaintiff claims he appealed the decision, but Col. Sipple affirmed it.

Plaintiff alleges that consistent with Lt. Jordan's sentence and Col. Sipple's affirmance,

he was confined to keeplock for thirty days, during which he was denied phone calls, television

access, commissary access, recreation for more than one hour per day, and educational

programming access.  Plaintiff further alleges he was dismissed from his position of chief

musician, lost good-time credit, and a clemency petition submitted on plaintiff's behalf was

"nullified." (Opp. at ECF 18).

Finally, plaintiff alleges that on an unspecified date, he attempted to file a grievance

regarding "[a]ll" of the claims in the complaint.  (Compl. at ECF 4).  Although plaintiff does not

allege he later attempted to re-file or ever successfully filed a grievance, plaintiff claims he

appealed the grievance to "the highest level," and that Col. Sipple denied it.  (Id. at ECF 4).

Plaintiff alleges that as a result, no investigation was made into his claims of an alleged

conspiracy among C.O. Sain Clair, C.O. Fitzpatrick, Lt. Jordan, and Col. Sipple.

## DISCUSSION

I.   Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative

complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v.

Iqbal, 556 U.S. 662, 679 (2009).[3]  First, a plaintiff's legal conclusions and "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements," are not entitled

to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678;

---

[3]      Unless otherwise indicated, case quotations omit all internal citations, quotations,
footnotes, and alterations.

Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard

of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544,

564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to

raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d

471, 474 (2d Cir. 2006) (per curiam). Applying the pleading rules permissively is particularly

appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v.

Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . .

threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the

Court "invent factual allegations" a plaintiff has not pleaded. Id.

II.    Sgt. Sheridan's Personal Involvement

To adequately allege a Section 1983 claim, a plaintiff must "plead that each Government-

official defendant, through the official's own individual actions, has violated the Constitution."

Ashcroft v. Iqbal, 556 U.S. at 676; see Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020)

(applying same standard to supervisors). Indeed, "personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d. Cir. 1994). "Where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." See Perkins v. City of New York, 2017 WL 1025987, at *2 (S.D.N.Y. Mar. 15, 2017).[4]

Here, the only reference to Sgt. Sheridan—outside of the caption—appears in the misbehavior report attached to plaintiff's complaint. According to the report, Sgt. Sheridan questioned plaintiff after the pat frisk incident and escorted him to keeplock. However, plaintiff does not allege Sgt. Sheridan was personally involved in any alleged sexual abuse, failure-to-protect, retaliation, or procedural due process violation.

Accordingly, plaintiff's claims with respect to defendant Sgt. Sheridan must be dismissed.

III.   Sexual Abuse Claim

Defendants argue plaintiff fails to state a claim for sexual abuse against C.O. Sain Clair. The Court agrees.

A.   Applicable Law

"[S]exual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment." See Boddie v. Schnieder, 105 F.3d 857, 860–61 (2d Cir. 1997). "[T]he principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." Crawford v.

---

[4]     Because plaintiff is proceeding pro se, he will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

Cuomo, 796 F.3d 252, 257–58 (2d Cir. 2015).  To state such a claim, a plaintiff's allegations

must satisfy an objective prong and a mens rea prong.  Id. at 256.

      With respect to the objective prong, "severe or repetitive sexual abuse of an inmate by a

prison official can be objectively, sufficiently serious enough to constitute an Eighth Amendment

violation." Boddie v. Schnieder, 105 F.3d at 861.  Indeed, "a single incident of sexual abuse, if

sufficiently severe or serious, may violate an inmate's Eighth Amendment rights." Crawford v.

Cuomo, 796 F.3d at 257.  "To show that an incident or series of incidents was serious enough to

implicate the Constitution, an inmate need not allege that there was penetration, physical injury,

or direct contact with uncovered genitalia." Id.  However, "prison security and safety may

require frequent searches of an intensely personal nature—and not every such search is properly

the subject of a lawsuit.  Searches that do not uncover contraband may be no less penologically

justified than those that do." Id. at 258.

      "The [mens rea] element of the Eighth Amendment test may [] be met by claims of

sexual abuse." Boddie v. Schnieder, 105 F.3d at 861.  "Where no legitimate law enforcement or

penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may,

in some circumstances, be sufficient evidence of a culpable state of mind." Id. at 861.  To

determine the purpose of a jail official's conduct, courts look to the timing of the official's

actions and comments made by the jail official during and after an incident. See Shepherd v.

Fisher, 2017 WL 666213, at *18 (S.D.N.Y. Feb. 16, 2017).

      B.    Application

      Here, plaintiff fails sufficiently to plead both the objective and mens rea prongs.  Plaintiff

claims that during a pat frisk, C.O. Sain Clair squeezed and fondled plaintiff's testicles and

manipulated his penis away from his testicles.  Plaintiff also alleges C.O. Sain Clair told plaintiff

he "would be done in a minute" and "ma[de] faces" during the pat frisk.  (Opp. at ECF 9).

With respect to the objective prong, plaintiff does not plausibly allege this single incident

was sufficiently severe to constitute an Eighth Amendment violation.  Plaintiff himself stated

that "[n]o physical injuries [were] sustained" (Compl. at ECF 3), and he offers no factual

allegations to suggest that this pat frisk was not "incidental to legitimate official duties."

Crawford v. Cuomo, 796 F.3d at 257.

With respect to the mens rea prong, plaintiff has not alleged any facts to suggest C.O.

Sain Clair searched him with the intention of humiliating plaintiff, for Sain Clair's sexual

gratification, or for any other improper purpose.  Indeed, although plaintiff alleges C.O. Sain

Clair told plaintiff that he "would be done in a minute" and made faces during the pat frisk, such

allegations, without more, do not give rise to an inference that C.O. Sain Clair pat frisked

plaintiff for any improper purpose.  (Opp. at ECF 9).

Accordingly, plaintiff's sexual abuse claim against C.O. Sain Clair must be dismissed.[5]

IV.    Failure to Protect Claim

The Court liberally construes plaintiff's complaint to allege a failure-to-protect claim.

The Eighth Amendment requires that prison officials take reasonable measures to ensure

inmates' safety.  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  A failure-to-protect claim thus

arises when prison officials act "with deliberate indifference to the safety of the inmate."  Hayes

---

[5]      To the extent plaintiff references for the first time in his opposition to the motion a
second incident in which plaintiff complained that C.O. Sain Clair touched him inappropriately
(Opp. at ECF 9, 26), the Court does not consider this new claim because it is not based on the
facts alleged in the complaint.  See Vlad-Berindan v. MTA New York City Transit, 2014 WL
6982929, at *6.

v. N.Y.C. Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996).  Like a claim for sexual abuse, plaintiff's allegations must satisfy both an objective prong and a mens rea prong.

To plead the objective prong, a plaintiff must plausibly allege the prison official's conduct was sufficiently serious, meaning that the conduct "pose[d] an unreasonable risk of serious damage to [the plaintiff's] health." Darnell v. Pineiro, 849 F.3d 17, 30 (2d Cir. 2017). "There is no static test to determine whether a deprivation is sufficiently serious; instead, the conditions themselves must be evaluated in light of contemporary standards of decency." Id.

To adequately plead the mens rea prong, a plaintiff must plausibly allege the defendant knew of a substantial risk of serious harm to the inmate and disregarded that harm by failing to take reasonable measures to abate it. Hayes v. N.Y.C. Dep't of Corrs., 84 F.3d at 620.  The defendant officer "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Cuoco v. Moritsugu, 222 F.3d 99, 107 (2d Cir. 2000).  A plaintiff can sufficiently plead a failure-to-protect claim "when [the] inmate inform[ed] corrections officers about a specific fear of assault and [was] then assaulted." Beckles v. Bennett, 2008 WL 821827, at *17 (S.D.N.Y. Mar. 26, 2008).

Here, plaintiff fails sufficiently to plead both the objective and mens rea prongs.  With respect to the objective prong, although plaintiff alleges he was threatened as a result of his alleged exposure to Pomeroy, he does not allege any additional facts that suggest a subsequent attempt or attack on his person.  Absent such allegations, plaintiff fails to allege any defendant exposed him to conditions that posed an unreasonable risk of serious damage to his health.  With respect to the mens rea prong, plaintiff does not allege he informed any officer that he had a specific fear of assault or that he was assaulted by anyone.

10

Accordingly, plaintiff's failure-to-protect claim, to the extent such a claim is included in the complaint, must be dismissed.

V.      First Amendment Retaliation Claim

The Court liberally construes plaintiff's complaint to allege C.O. Sain Clair and C.O. Fitzpatrick retaliated against plaintiff's exercise of his First Amendment rights by filing a false misbehavior report.

A.      Applicable Law

To adequately plead a First Amendment retaliation claim, a plaintiff must plausibly allege:  (i) he engaged in constitutionally protected speech or conduct, (ii) a defendant took adverse action against him, and (iii) the protected speech and adverse action are causally connected.  Dolan v. Connolly, 794 F.3d 290, 294 (2d Cir. 2015).

Courts approach prisoners' retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." Dolan v. Connolly, 794 F.3d at 295.  Accordingly, a prisoner pursuing a retaliation claim must not rest on "wholly conclusory" allegations, but rather must allege "specific and detailed" supporting facts.  Id.

With respect to the first element, "It is well established that retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983." Dolan v. Connolly, 794 F.3d at 294.  "Filing a lawsuit or an administrative complaint and filing prison grievances all constitute protected activities."  Gilliam v. Black, 2019 WL 3716545, at *15 (D. Conn. Aug. 7, 2019) (citing Dolan v. Connolly, 794 F.3d at 294).

In addition, although "not every statement an inmate makes in prison is afforded First

Amendment protection," certain "verbal complaints" by prisoners about the conduct of prison

officials may be considered protected action for purposes of a First Amendment retaliation claim.

See McIntosh v. United States, 2016 WL 1274585, at *26 (S.D.N.Y. Mar. 31, 2016) (collecting

cases).  However, with respect to such verbal complaints, "courts in the Second Circuit and

others have distinguished between unambiguously protected activity and situations where an

inmate verbally confronts a prison official." Id.

Regarding the second element, "[o]nly retaliatory conduct that would deter a similarly

situated individual of ordinary firmness from exercising his or her constitutional rights

constitutes an adverse action for a claim of retaliation." Davis v. Goord, 320 F.3d 346, 353 (2d

Cir. 2003).  Retaliatory acts that fail to meet this standard are "simply de minimis and therefore

outside the ambit of constitutional protection." Id.  Courts tailor the inquiry "to the different

circumstances in which retaliation claims arise, bearing in mind that prisoners may be required to

tolerate more than average citizens, before a retaliatory action taken against them is considered

adverse." Id.  Moreover, although a prison inmate has "no general constitutional right to be free

from being falsely accused in a misbehavior report," Boddie v. Schnieder, 105 F.3d at 862,

prison officials may not retaliate against inmates for exercising their constitutional rights,

see Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995), abrogated on other grounds by Tangreti

v. Bachmann, 983 F.3d at 615.

Finally, to sufficiently allege a causal connection, the plaintiff's "allegations must

support an inference that the protected conduct was a substantial or motivating factor for the

adverse action[]." Dorsey v. Fisher, 468 F. App'x 25, 27 (2d Cir. 2012) (summary order).  "A

plaintiff can establish a causal connection that suggests retaliation by showing that protected

activity was close in time to the adverse action." Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009).

    B.    <u>Application</u>

Here, the complaint can be liberally construed to allege three potentially protected activities: (i) plaintiff's complaint during the pat frisk, (ii) plaintiff's complaints on the day of the pat frisk to the superintendent and administrative deputy, and (iii) plaintiff's attempt to file a grievance.  However, although plaintiff plausibly pleads the misbehavior report C.O. Sain Clair filed on September 13, 2019 (and which was signed by C.O. Fitzpatrick as an "employee witness" (Compl. at ECF 8)), is an adverse action, plaintiff fails plausibly to allege a causal connection between the misbehavior report and any of his potentially protected activities.

    1.    <u>Complaint During Pat Frisk</u>

With respect to plaintiff's complaint during the pat frisk, plaintiff does not offer sufficiently "specific and detailed" allegations that he engaged in constitutionally protected speech or conduct. Dolan v. Connolly, 794 F.3d at 295.   Plaintiff alleges only that that C.O. Fitzpatrick said to C.O. Sain Clair "write a disciplinary [r]eport against me [plaintiff], due to the fact, that I [plaintiff], was complaining to Officer Sain Clair about fondling my [t]esticles, as he was pat frisking me." (Compl. at ECF 3).  Beyond stating C.O. Fitzpatrick described plaintiff as "complaining," plaintiff neither explains what complaints or comments plaintiff specifically made during the pat frisk nor provides additional context from which the Court can infer plaintiff took part in an "unambiguously protected activity" sufficient to state a retaliation claim. McIntosh v. United States, 2016 WL 1274585, at *26.  Indeed, this allegation along with the misbehavior report's description of plaintiff's actions—that during the pat frisk incident, plaintiff shouted he disliked how C.O. Sain Clair was frisking him and created a disturbance—merely

suggests plaintiff verbally confronted C.O. Sain Clair about how C.O. Sain Clair was pat frisking

plaintiff. Without more "specific and detailed" allegations of what occurred during the pat frisk,

the Court cannot conclude plaintiff has plausibly alleged a retaliation claim based upon his

comments during the pat frisk. Because plaintiff does not plausibly allege the first prong of the

retaliation analysis, he also fails to allege a causal connection to the misbehavior report.

        2.      <u>Complaints to Superintendent and Administrative Deputy</u>

With regard to plaintiff's complaints to the superintendent and administrative deputy on

September 13, 2019, plaintiff offers no details about what exactly he said to these individuals.

Again, the Court is unable to conclude from plaintiff's vague allegation that his complaints

constitute "unambiguously protected activity" sufficient to state a retaliation claim. <u>See</u>

<u>McIntosh v. United States</u>, 2016 WL 1274585, at *26. Because plaintiff does not plausibly

allege the first prong of the retaliation analysis, he also fails to allege a causal connection to the

misbehavior report.

        3.      <u>Attempted Grievance</u>

Finally, with respect to his grievance, plaintiff alleges he attempted to file a grievance on

an unspecified date, but that it was rejected. Plaintiff does not allege he ever re-filed or

successfully filed a grievance against C.O. Sain Clair and C.O. Fitzpatrick.

Even assuming an unsuccessful attempt to file a grievance is constitutionally protected

speech, plaintiff does not plausibly allege a causal connection between the unsuccessful

grievance and the misbehavior report because plaintiff does not specify whether he attempted to

file the grievance before or after he learned about the misbehavior report. If plaintiff attempted

to file the grievance <u>after</u> the misbehavior report was filed, there can be no inference that

plaintiff's attempt to file the grievance caused C.O. Sain Clair and C.O. Fitzpatrick to file the

misbehavior report. In other words, the allegations in the complaint do not "support an inference that the [attempt to file a grievance] was a substantial or motivating factor for the adverse action[]." Dorsey v. Fisher, 468 F. App'x at 27.

Accordingly, plaintiff's claim that C.O. Sain Clair and C.O. Fitzpatrick retaliated against him must be dismissed.

VI.    Procedural Due Process Claim

Defendants argue plaintiff fails to state a claim for a procedural due process violation.

The Court agrees.

A.    Applicable Law

To establish a violation of due process under the Fourteenth Amendment, a plaintiff must show: "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001).

1.    Liberty Interest

As a threshold matter, "[a] prisoner's liberty interest is implicated by prison discipline . . . only if the discipline imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004). Although there is no bright-line rule for establishing when SHU confinement rises to the level of a constitutional violation, courts consider both the duration and the conditions of confinement. See id. Factors relevant to this determination include "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed compared to discretionary confinement." Id.

The Supreme Court has found that a thirty-day disciplinary "segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create

a liberty interest." Sandin v. Conner, 515 U.S. 472, 486 (1995).  In the Second Circuit,

"restrictive confinements of less than 101 days do not generally raise a liberty interest warranting

due process protection, and thus require proof of conditions more onerous than usual." Davis v.

Barrett, 576 F.3d 129, 133 (2d Cir. 2009).  Absent allegations of atypical and severe hardship,

courts in this Circuit routinely find that where the time spent in SHU is short, such as thirty days,

a liberty interest is not implicated.  See, e.g., Thomas v. DeCastro, 2018 WL 1322207, at *6–7

(S.D.N.Y. Mar. 13, 2018).  Under "normal conditions of SHU confinement" a prisoner is

> placed in a solitary confinement cell, kept in his cell for 23 hours a day, permitted
> to exercise in the prison yard for one hour a day, limited to two showers a week,
> and denied various privileges available to general population prisoners, such as
> the opportunity to work and obtain out-of-cell schooling. Visitors [are] permitted,
> but the frequency and duration [is] less than in general population. The number of
> books allowed in the cell [is] also limited.

Colon v. Howard, 215 F.3d 227, 231 (2d Cir. 2000).

Further, "a prisoner has no liberty interest with respect to any procedures available to

vindicate an interest in state clemency because clemency is inherently discretionary and subject

to the whim, or grace, of the decisionmaker; it is, in other words, a form of relief to which a

prisoner has no right." McKithen v. Brown, 626 F.3d 143, 151 (2d Cir. 2010).

However, the loss of good-time credit can implicate a liberty interest when the applicable

state statutory scheme provides that awarded good-time credit may only be revoked under

specific circumstances.  See Wolff v. McDonnell, 418 U.S. 539, 556–58 (1974); see also

Edwards v. Goord, 362 F. App'x 195, 196–97 (2d Cir. 2010) (summary order) (noting a prisoner

has a protected liberty interest in accrued good-time credits but not in the discretionary grant of

such credits).

2.     Due Process Violations

Even if an inmate's liberty interest is implicated, "[b]ecause prison disciplinary proceedings are not part of a criminal prosecution, the full panoply of rights due a defendant in such proceedings does not apply." Williams v. Menifee, 331 F. App'x 59, 60 (2d Cir. 2009) (summary order) (quoting Wolff v. McDonnell, 418 U.S. at 556). The procedural due process afforded a prisoner charged with a violation in a disciplinary proceeding consists of: "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (citing Wolff v. McDonnell, 418 U.S. at 563–67). The Second Circuit has emphasized that in the context of disciplinary hearings, "the only process due an inmate is that minimal process guaranteed by the Constitution, as outlined in Wolff." Williams v. Menifee, 331 F. App'x at 60.

An "inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Wolff v. McDonnell, 418 U.S. at 566. However, "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses." Id. "[T]he due process clause does not require prison officials to state on the record their reasons for denying an inmate's request to confront a particular witness." Freeman v. Rideout, 808 F.2d 949, 953 (2d Cir. 1986). Prison officials can explain their reason for refusing to call certain witnesses "at the hearing, or they may choose to explain it later." Ponte v. Real, 471 U.S. 491, 496 (1985). Moreover, "a prisoner's request for a witness can be denied on the basis of irrelevance or lack of necessity." Kingsley v. Bureau of

17

Prisons, 937 F.2d 26, 30 (2d Cir. 1991). "[I]f a witness will not testify if called, it cannot be a 'necessity' to call him." Silva v. Casey, 992 F.2d 20, 22 (2d Cir. 1993) (per curiam).

"[S]ome evidence" must support the hearing disposition. Sira v. Morton, 380 F.3d at 69. "Judicial review of this 'some evidence' standard is narrowly focused." Id. at 76. "[I]t 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.'" Id. (quoting Superintendent v. Hill, 472 U.S. 445, 455–56 (1985)).

Finally, "it is entirely inappropriate to overturn the outcome of a prison disciplinary hearing because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial." Powell v. Coughlin, 953 F.2d 744, 750 (2d Cir. 1991); see Purcelle v. Thomas, 2020 WL 1516421, at *13 (N.D.N.Y. Mar. 6, 2020), report and recommendation adopted, 2020 WL 1511079 (N.D.N.Y. Mar. 30, 2020) (holding harmless hearing officer's failure to provide non-existent video when plaintiff did not "sufficiently establish[] any prejudice resulting from the lack of video footage"). As the Second Circuit has explained,

> If a person may be convicted and obliged to serve a substantial prison sentence notwithstanding a constitutional error determined to be harmless, surely the conditions of confinement of a sentenced prisoner may be made temporarily more severe as discipline for a prison rules infraction despite a harmless error in adjudicating the violation.

Powell v. Coughlin, 953 F.2d at 750.

B.      Application

Here, plaintiff has not plausibly alleged his liberty interest was implicated, but even assuming he did, he does not plausibly plead his procedural due process rights were violated.

1.    Liberty Interest

First, plaintiff does not sufficiently allege a liberty interest.

Plaintiff claims he was sentenced to thirty days keeplock confinement during which time
he was denied privileges including phone calls, television, commissary access, recreational
access for more than one hour per day, and educational programming access, and that a
clemency petition submitted on his behalf was "nullified." (Opp. at ECF 18). These allegations
do not plausibly plead a liberty interest. See Thomas v. DeCastro, 2018 WL 1322207, at *6 (no
liberty interest when plaintiff alleged he spent ten days in keeplock without phones, packages,
and commissary); Smart v. Annucci, 2021 WL 260105, at *5 (S.D.N.Y. Jan. 26, 2021) (no
liberty interest in forty days SHU confinement when plaintiff did not allege harsher than normal
SHU conditions); McKithen v. Brown, 626 F.3d at 151 (no liberty interest in state clemency
procedures).

However, plaintiff also alleges he suffered "the loss of gain of good behavior that would
have resulted the herein being transferred to a medium correctional facility wherein the petitioner
could have been released from the prison system." (Opp. at ECF 5). This suggests plaintiff may
have a liberty interest in the loss of good-time credits. But even drawing all inferences in
plaintiff's favor, this one vague allegation does not make clear whether plaintiff had good-time
credits that were taken away as a part of the punishment imposed by Lt. Jordan, or if plaintiff lost
an opportunity to gain good-time credits. Plaintiff does not offer any other allegations about loss
of good-time credit, such as how much credit he lost, that might otherwise allow the Court to
infer plaintiff does have a liberty interest in good-time credits. The Court may "not invent
allegations" to fill in this gap. See Chavis v. Chappius, 618 F.3d at 170.

However, even assuming for the purposes of this motion that plaintiff has plausibly alleged a liberty interest in the loss of good-time credit, plaintiff does not plausibly plead a due process violation.

2.      Alleged Due Process Violations

Liberally construing the complaint, plaintiff alleges three due process violations:  (i) Pomeroy was not called as a witness, (ii) hearing officer Lt. Jordan did not provide video of the pat frisk incident even though two other prison official indicated the video existed, and (iii) the hearing disposition is not supported.

First, plaintiff alleges neither that he requested to call Pomeroy nor that Lt. Jordan refused such a request.  See Chavis v. Chappius, 618 F.3d at 170 (the court may not "invent factual allegations").  If plaintiff did not request Pomeroy be called, there can be no denial of due process because no process was requested.

Second, plaintiff does not plausibly plead Lt. Jordan denied him due process by failing to provide the requested video.  According to plaintiff, C.O. Santos told plaintiff the pat frisk incident had been recorded, and Lt. Barlow told plaintiff that video cameras were recording at the time of the pat frisk incident.  Plaintiff claims that on the first day of the hearing, Lt. Jordan told him he was attempting to get the video, but that on the last day of the hearing, he told plaintiff the video did not exist.  Although a close call, these allegations taken together fail to give rise to an inference that Lt. Jordan did not provide the video at the hearing because he destroyed it, and not because—as Lt. Jordan told plaintiff and indicated on the "Witness Interview Notice"— Lt. Jordan tried to get the video but then learned the video did not exist.

Moreover, "[e]ven assuming [Lt. Jordan]'s failure to secure the requested video constituted a procedural deficiency, [p]laintiff has not sufficiently established any prejudice

20

resulting from the lack of video footage." Purcelle v. Thomas, 2020 WL 1516421, at *13.

Indeed, plaintiff alleges that in addition to three witnesses who testified on his behalf at the

hearing, non-party C.O. Michalski testified plaintiff submitted to the pat frisk and was not

aggressive.  In addition, plaintiff was found not guilty of the lewd conduct charge.  Thus,

plaintiff has not plausibly pleaded video footage would have affected the outcome of the

disciplinary hearing.  See Powell v. Coughlin, 953 F.2d at 750.

Third, with respect to the hearing disposition, in which he was found guilty of the

remaining four charges, plaintiff's own allegations indicate there was at least "some evidence" to

support that disposition.  Plaintiff himself alleges "[t]here was no [e]vidence to support any of

the charges . . . other[] than the words of the accusing Correctional Officers, K. Sain Clair and T.

Fitzpatrick."  (Opp. at ECF 14).

Finally, to the extent plaintiff argues Col. Sipple's affirmance of the disciplinary hearing

verdict rendered by Lt. Jordan also violates plaintiff's due process rights, "[f]ailing to correct

another officer's violation does not suffice" to plead Col. Sipple's personal involvement in these

alleged violations.  See Smart v. Annucci, 2021 WL 260105, at *6–7 (discussing Tangreti v.

Bachmann, 983 F.3d 609 (2d Cir. 2020)).

Accordingly, plaintiff's procedural due process claims must be dismissed.

VII.   Conspiracy Claim

Defendants argue plaintiff has failed to allege an actionable conspiracy arising under

Sections 1983.

The Court agrees.

To survive a motion to dismiss a Section 1983 conspiracy claim, a plaintiff must allege

(i) "an agreement between two or more state actors or between a state actor and a private entity";

(ii) "to act in concert to inflict an unconstitutional injury"; and (iii) "an overt act done in furtherance of that goal[,] causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). "[A]lthough a plaintiff is not required to list the place and date of defendants' meetings and the summary of their conversations when he pleads conspiracy, the pleadings must present facts tending to show agreement and concerted action." Concepcion v. City of New York, 2008 WL 2020363, at *3 (S.D.N.Y. May 7, 2008). "[C]onclusory allegations of a § 1983 conspiracy are insufficient." Pangburn v. Culbertson, 200 F.3d at 72.

Further, "a violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such right." Romer v. Morgenthau, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000). If a plaintiff fails to show an underlying constitutional violation on which to base a Section 1983 conspiracy claim, the conspiracy claim fails as a matter of law. See AK Tournament Play, Inc. v. Town of Wallkill, 2011 WL 197216, at *3–4 (S.D.N.Y. Jan. 19, 2011), aff'd, 444 F. App'x 475 (2d Cir. 2011) (summary order). A conspiracy allegation alone is not sufficient. See Nealy v. Berger, 2009 WL 704804, at *5 (E.D.N.Y. Mar. 16, 2009) ("The mere use of the term 'conspiracy'. . . is clearly insufficient to satisfy Rule 12(b)(6) in connection with a Section 1983 conspiracy claim.").

Here, plaintiff argues C.O. Sain Clair and C.O. Fitzpatrick conspired to file a false misbehavior report against him with respect to C.O. Sain Clair's pat frisk of plaintiff on the morning of September 13, 2019. He further argues Lt. Jordan was also involved in the conspiracy insofar as he did not provide video of the pat frisk incident at the hearing, and Col. Sipple was involved insofar as he affirmed Lt. Jordan's hearing disposition. However, as discussed above, plaintiff has failed to allege any underlying constitutional violation against any

defendant on which to base his alleged conspiracy claim.  See <u>AK Tournament Play, Inc. v. Town of Wallkill</u>, 2011 WL 197216 at *3.

Accordingly, plaintiff's conspiracy claim must be dismissed.

VIII.   <u>Grievance Procedure Claim</u>

Defendants argue plaintiff fails plausibly to allege a violation of his constitutional rights with respect to the grievance process.

The Court agrees.

"[I]nmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983." <u>Cancel v. Goord</u>, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001).  "Therefore, the refusal to process an inmate's grievance or failure to see to it grievances are properly processed does not create a claim under § 1983." <u>Id</u>.  Nor does failure to investigate or respond to a grievance give rise to a constitutional claim. See <u>Swift v. Tweddell</u>, 582 F. Supp. 2d 437, 445–46 (W.D.N.Y. 2008).  "Indeed, any claim that plaintiff[] [was] deprived of [his] right to petition the government for redress is belied by the fact of [his] bringing this lawsuit." <u>Alvarado v.  Westchester County</u>, 22 F. Supp. 3d 208, 214 (S.D.N.Y. 2014).

Accordingly, plaintiff's claim for an insufficient grievance procedure must be dismissed.

IX.   <u>Failure to Investigate Claim</u>

To the extent plaintiff argues his claims that defendants conspired against him were not investigated, "[i]t is well-settled that failure to investigate alleged unconstitutional action does not state a claim under Section 1983." <u>Wingate v. Horn</u>, 2007 WL 30100, at *6 (S.D.N.Y. Jan. 4, 2007), <u>aff'd</u>, 2009 WL 320182 (2d Cir. Feb. 10, 2009) (summary order).

Accordingly, plaintiff's failure to investigate claim must be dismissed.

23

X.    Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that courts "should freely

give leave" to amend a complaint "when justice so requires."  Liberal application of Rule 15(a)

is warranted with respect to pro se litigants, who "should be afforded every reasonable

opportunity to demonstrate that [they have] a valid claim."  Matima v. Celli, 228 F.3d 68, 81 (2d

Cir. 2000).  District courts "should not dismiss [a pro se complaint] without granting leave to

amend at least once when a liberal reading of the complaint gives any indication that a valid

claim might be stated."  Cuoco v. Moritsugu, 222 F.3d at 112.

Here, because a liberal reading of the complaint indicates there may be valid claims for

(i) First Amendment retaliation against C.O. Sain Clair and C.O. Fitzpatrick, (ii) a procedural

due process claim against Lt. Jordan, and (iii) a conspiracy claim against C.O. Sain Clair, C.O.

Fitzpatrick, and Lt. Jordan, the Court grants plaintiff leave to file an amended complaint as to

these potential claims in accordance with the instructions below to the extent he can do so

**clearly, concisely, truthfully, and plausibly**.

To the greatest extent possible, plaintiff's amended complaint must address the

deficiencies identified in this Opinion and Order, and must:

1.    describe in **chronological** order all relevant events, stating the facts that support

plaintiff's case, including what each individual defendant did or failed to do;

2.    describe all constitutionally protected speech or action plaintiff partook in that

could form the basis for a First Amendment retaliation claim, including by specifying when

plaintiff attempted to file a grievance regarding the claims in this case;

3.      with respect to plaintiff's procedural due process claim, state the facts indicating his liberty interest was implicated, either because he suffered an atypical and significant hardship or by specifying what good-time credit he lost;

4.      give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event; and

5.      describe how each defendant's acts or omissions violated plaintiff's rights and describe the injuries he suffered as a result of those acts or omissions.

The amended complaint will completely replace the complaint, as well as plaintiff's opposition to the motion to dismiss, and his sur-reply, including the attachments thereto. Therefore, plaintiff should include in the amended complaint all information necessary for his claims. **However, plaintiff is directed to include in his amended complaint only those facts and documents he believes plausibly support a violation of his constitutional rights.**

## CONCLUSION

The motion to dismiss is GRANTED.  However, plaintiff is granted leave to file an amended complaint in accordance with the instructions above.

If plaintiff wishes to file an amended complaint, he must do so by no later than May 17, 2021, using the amended complaint form attached to this Opinion and Order.  **If plaintiff fails to file an amended complaint or seek additional time to do so by May 17, 2021, the Court will deem plaintiff to have abandoned the case, and will direct the Clerk to enter judgment in defendants' favor and close this case.**

The Clerk is instructed to terminate Sgt. Sheridan as a defendant in this action.

The Clerk is further instructed to terminate the motion.  (Doc. #15).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Chambers will mail a copy of this Opinion and Order to plaintiff at the address on the docket.

Dated: March 15, 2021
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

No. _____
(To be filled out by Clerk's Office)

**AMENDED
COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

Rev. 5/6/16

## I.   LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a *"Bivens"* action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.   PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name          Middle Initial          Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City          State          Zip Code

## III.   PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee

☐  Civilly committed detainee

☐  Immigration detainee

☐  Convicted and sentenced prisoner

☐  Other: _____

## IV.   DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

_____

First Name                    Last Name                          Shield #

_____

Current Job Title (or other identifying information)

_____

Current Work Address

_____

County, City                          State                          Zip Code

Defendant 2:

_____

First Name                    Last Name                          Shield #

_____

Current Job Title (or other identifying information)

_____

Current Work Address

_____

County, City                          State                          Zip Code

Defendant 3:

_____

First Name                    Last Name                          Shield #

_____

Current Job Title (or other identifying information)

_____

Current Work Address

_____

County, City                          State                          Zip Code

Defendant 4:

_____

First Name                    Last Name                          Shield #

_____

Current Job Title (or other identifying information)

_____

Current Work Address

_____

County, City                          State                          Zip Code

## V.   STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

_____

## VI.   RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

_____                    _____
Dated                                                                      Plaintiff's Signature

_____    _____    _____
First Name                                    Middle Initial               Last Name

_____
Prison Address

_____    _____    _____
County, City                                   State                            Zip Code

Date on which I am delivering this complaint to prison authorities for mailing:   _____